UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN DUNLAP,

    Plaintiff,

v.                                            Case No. 4:06-cv-138
                                              Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                   /

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on November 26, 1961 and completed two years of college (AR 44, 58).[1] Plaintiff alleges that she has been disabled since June 1, 2002 (AR 44). She had previous employment as a dancer, cashier, janitor, cleaner, auditor and factory worker (AR 53, 63-68, 731-37). Plaintiff identified her disabling conditions as asthma, osteoporosis, curvature of the spine, depression, hemochromatosis, drug addiction, anemia, sleep disorders, anxiety attacks and pancreatitis (AR 52). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on March 16,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

2006 (AR 14-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

3

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that she has not engaged in substantial gainful activity at any time relevant to the decision (AR 16). Although plaintiff worked after her alleged onset date, her earnings do not meet the criteria for substantial gainful activity (AR 16). Second, the ALJ found that she suffered from severe impairments of asthma, chronic obstructive pulmonary disease (COPD), osteoporosis, depression, hemochromatosis and hepatitis C (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday; she can perform simple repetitive tasks" (AR 17). The ALJ found that plaintiff's allegations regarding her limitations are not totally credible (AR 17). The ALJ also found that plaintiff's past relevant work as a cleaner and cashier is not precluded by her RFC and that she is capable of performing such work (AR 17). Accordingly, the ALJ determined that plaintiff

was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 29-30).

### III. ANALYSIS

Plaintiff raised two related issues on appeal.

**A.  Plaintiff is entitled to DIB and SSI because the ALJ failed to give adequate weight and consideration to the combined effects of the exertional and non-exertional disabilities of plaintiff contrary to 20 C.F.R. § 404.1527.**

**B.  The determination by the ALJ that plaintiff does not suffer from a severe mental disorder is not supported by substantial evidence in the record.**

Although plaintiff contends that the ALJ failed to comply with the requirements of § 404.1527, she presents no arguments under this regulation. Rather, plaintiff complains that the ALJ improperly relied on a March 31, 2004 letter from Sven M. Zethelius, M.D. (AR 388), that the great weight of the evidence (especially the pharmacy records) indicate that she suffers from mental illness, and that the ALJ improperly evaluated the opinions of examining consultants Timothy Strang, Ph. D. and Elaine M. Tripi, Ph.D.

The ALJ found acknowledged that plaintiff suffered from a non-exertional impairment, i.e., a severe impairment of depression (AR 17). This mental impairment reduced her RFC by limiting her to performing "simple repetitive tasks" (AR 17). The ALJ rejected plaintiff's other claims of mental illness, finding that "claimant's mental problems appear to be related to her polysubstance abuse, as she has been hospitalized approximately 5 times during the relevant period for complications resulting from drug overdoses or abuse and depression [AR 145, 179-80, 335-36, 412, 490-91] and noncompliance with prescribed medications and treatment instructions [AR 486]" (AR 17). Under the applicable federal law, 42 U.S.C. § 423(d)(2)(C), drug addiction or alcoholism

may not be a material factor to a disability finding. *Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004). In accordance with this restriction, an ALJ should look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse. *Id.* Plaintiff points to no evidence in the administrative record establishing that her other claims of mental illness are independent of her polysubstance abuse.

Furthermore, plaintiff's non-compliance with her prescribed treatment is relevant to the disability determination. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927 (6th Cir. 1987) (noting that plaintiff's respiratory problems could be effectively controlled with use of drugs) (per curiam); *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (finding no disability where the claimant' impairments were controlled with medication).

The ALJ relies on the opinion of plaintiff's treating psychiatrist, Dr. Zethelius, to establish that her psychiatric condition is controlled by medication. Dr. Zethelius treated plaintiff from September 2003 through March 2004 (AR 385-96). Dr. Zethelius' records reflect that in March 2004, plaintiff's condition, i.e., her major mood disorder, was improved, well controlled and resolving (AR 389). The doctor's records reflect that plaintiff's disorder existed "in a context of a history of substance abuse, hemochromatosis, possible hepatitis C, lordosis and osteoporosis" (AR

390).  In his March 31, 2004 referral letter to an oncologist, Dr. Zethelius advised the other doctor that he had treated plaintiff for the mood disorder and that she had a history of alcohol and tobacco abuse (AR 388).  Dr. Zethelius offered the opinion that plaintiff "appears to be largely compensated from a psychiatric standpoint" but needed a primary care physician (AR 388).  These records support the ALJ's determination that plaintiff's mental illness was successfully treated with medication.

Plaintiff contends that the ALJ should have found her disabled based upon the global assessment of functioning (GAF) scores assigned by two examining consultants, Drs. Strang (AR 369-74) and Tripi (AR 406-11).[2]  Dr. Strang examined plaintiff on December 29, 2003 (AR 369).  At that time, the doctor diagnosed her as suffering from:  depressive disorder, not otherwise specified; panic disorder without agoraphobia; opioid dependence (early full remission); alcohol abuse; and nicotine dependence (AR 372).  His gave her a guarded prognosis, noting that plaintiff "is in the early stages of recovery from a  chemical dependency problem" (AR 372).  Dr. Strang assigned plaintiff a GAF score of 49, which lies within the 41 to 50 range and indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

---

[2] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

*DSM-IV-TR*, p. 34. The ALJ gave Dr. Strang's opinion little weight, because it did not address plaintiff's ability to work (AR 18).

Dr. Tripi examined plaintiff on June 3, 2004 (AR 406). At that time, the doctor diagnosed plaintiff as suffering from major depression and substance abuse in partial remission (AR 407). The doctor noted that plaintiff used drugs and alcohol to self medicate over the years, and that she was "working very diligently at staying away from these substances" (AR 407). Dr. Tripi assigned plaintiff a GAF score of 42, which, like Dr. Strang's GAF score of 49, lay within the 41 to 50 range. Dr. Tripi opined that plaintiff "is not able to sustain substantial, gainful work activity at any skill or exertional level" (AR 407).

Plaintiff contends that the ALJ erred because the GAF scores assigned by Drs. Strang and Tripi created a presumption of disability. Plaintiff's Brief at 15. The court disagrees. Plaintiff provides no authority that a GAF score creates such a presumption in social security disability determinations. Indeed, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). "[T]he determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *Hardaway*, 823 F.2d at 927.

Here, the ALJ chose to assign greater weight to the opinions expressed by plaintiff's treating psychiatrist, Dr. Zethelius, than to the opinions expressed by the consulting examiners Drs. Strang and Tripi (AR 18). The ALJ could properly assign more weight to the opinions expressed by plaintiff's treating psychiatrist than those expressed by the examining consultants. It is the

function of the Commissioner to resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). *See, e.g., Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians"). A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Accordingly, the ALJ could properly rely on Dr. Zethelius' opinion in determining that plaintiff did not suffer from disabling mental impairments.

Finally, the record reflects that the ALJ found that plaintiff suffered from a number of physical impairments, i.e., asthma, COPD, osteoporosis, depression, hemochromatosis and hepatitis C (AR 17). The ALJ noted that plaintiff's asthma and COPD are exacerbated by her continued smoking despite medical advice to stop, and that she was hospitalized for two days in August 2005 for acute liver failure related to the hepatitis C (AR 17). In her brief, plaintiff cryptically mentions the existence of exertional impairments, stating that she has a history of a painful left shoulder infection, chronic low back pain and a painful liver disorder. Plaintiff's brief at 12. However, plaintiff provides no argument with respect to how the ALJ erred in evaluating these claims. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

9

**IV.     Recommendation**

I  respectfully recommend that the Commissioner's decision be affirmed.


Dated:  January 7, 2008                             /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).